■ STEVEN RANAUDO et al., Appellants, v JOE C. KEY et al., Respondents. [921 NYS2d 407]—

Garry, J. Appeal from an order of the Supreme Court (Dowd, J.), entered April 13, 2010 in Otsego County, which, among other things, granted defendants' motions for summary judgment dismissing the complaint.

At approximately 8:07 P.M. on February 27, 2007, plaintiff Steven Ranaudo (hereinafter plaintiff) was in the passenger seat of a vehicle traveling eastbound on Interstate 88[1] in Otsego County when the vehicle—driven by plaintiff's son—encountered two tractor trailers ahead and almost side-by-side occupying both the driving (right) and passing (left) lanes at less than the posted speed limit of 65 miles per hour. The tractor trailer occupying the driving lane was owned by defendant Hartt Transportation Systems and was being operated by defendant Harold S. Joy. Defendant Joe C. Key, operating a tractor trailer owned by defendant J.B. Hunt Transport, Inc., was occupying the passing lane, in front of the Ranaudo vehicle, attempting to overtake Joy. According to plaintiff, Key's tractor trailer took around six minutes or six miles to pass Joy's vehicle

---

1. Interstate 88 is a controlled access four-lane highway, with eastbound and westbound travel lanes separated by a median strip.

and return to the driving lane. Unbeknownst to the occupants of the Ranaudo vehicle, and approximately two minutes before Key returned to the driving lane, Key heard over the CB radio that there was an oncoming vehicle traveling the wrong way (westward) in the eastbound passing lane somewhere on the roadway ahead. Key later testified that he tried to signal to Joy, so that Joy would let him get ahead to pass. Joy turned off his cruise control to slow down his vehicle.[2] Within seconds of Key's passing of Joy and moving into the driving lane, the oncoming vehicle, driven by Jaime Rudnitsky, struck the rear driver side of Key's trailer, continued westbound and struck the Ranaudo vehicle head-on, ultimately coming to rest underneath Joy's tractor trailer. Rudnitsky died at the scene.

Plaintiff and his wife, derivatively, commenced this action against Key, Joy and their employers, seeking damages for the injuries sustained as a result of the collision.[3] Plaintiffs alleged, among other things, that Key and Joy breached their duty of care to them by not completing or, in the case of Joy, not permitting the pass of another vehicle as quickly as possible. Following discovery, defendants moved for summary judgment dismissing the complaint and plaintiffs cross-moved for partial summary judgment as to liability. Supreme Court granted defendants' motions. Plaintiffs appeal, and we affirm.

To maintain an action for negligence, it must be shown that the defendant owed a duty of care to the plaintiff that the defendant breached and, further, that the alleged negligence was a proximate cause of the plaintiff's injuries (see Kunz v New Netherlands Routes, Inc., 64 AD3d 956, 957 [2009]; Kampff v Ulster Sanitation, 280 AD2d 797, 797 [2001]). Motorists generally have a duty to operate their vehicles "with reasonable care taking into account the actual and potential dangers existing from weather, road, traffic and other conditions" (PJI 2:77). This duty includes seeing what should be seen and taking ordinary care under the circumstances to avoid an accident (see Gage v Raffensperger, 234 AD2d 751, 752 [1996]; DeAngelis v Kirschner, 171 AD2d 593, 595 [1991]). As relevant herein, motorists are also obligated, when passing another motor vehicle from the left, to "return to an authorized lane of travel as

---

2. Joy testified that he did not turn on his CB radio until he noticed the lights from the Ranaudo vehicle behind him. He also stated that he did not see Key gesturing to him and did not hear anything on his CB radio warning about the oncoming vehicle in the wrong lane.

3. Plaintiffs' complaint also originally named as a defendant the owner of the vehicle that Rudnitsky was driving. The action was subsequently discontinued as to him by stipulation of the parties.

soon as practicable" (Vehicle and Traffic Law § 1124; *see* Vehicle and Traffic Law § 1120).

Both Joy and Key testified that they were trained and experienced operators of tractor trailers. Joy testified at his examination before trial that his vehicle was loaded with goods that evening and he was initially traveling in the driving lane with his CB radio turned off and his cruise control set at just under the posted speed limit. He noticed Key's tractor trailer when it pulled up next to him on the left attempting to pass him. Joy stated that Key was gaining speed until they reached a hill when Key's vehicle slowed down, a fact that, in Joy's experience, would have most likely occurred because Key was carrying more weight or had a smaller engine in the tractor. Joy also indicated that it was common practice not to slow down when another vehicle was passing, so as to avoid decelerating to the point of becoming a hazard to others in the roadway. In any event, Joy stated that after he noticed lights from the Ranaudo vehicle behind him, he turned on his CB radio and heard another truck driver behind him advise him to let Key pass so that the Ranaudo vehicle could get by. Joy turned off his cruise control, Key accelerated past him and pulled right into the driving lane, whereupon a car "came out of nowhere" and struck the Ranaudo vehicle in the passing lane.

Key testified at his examination before trial that he was aware of his responsibility when using the passing lane to pass other vehicles "within a timely period" and then return to the driving lane. He stated that on the date of the accident, his trailer was loaded close to capacity with goods and he was traveling below the speed limit. He stated that he was in constant CB radio contact with the drivers of two other tractor trailers behind him that were owned by his employer and headed to the same destination. Key decided to pass Joy's slower moving tractor trailer. He testified that six minutes was a standard time for such a pass to occur and, given the grade of the road, it was not unusual that Joy's tractor trailer seemed to speed up at one point. Key stated that, a few minutes into his attempt to pass, he was informed over the CB radio that the Ranaudo vehicle was behind him in his blind spot. A few minutes after that, one of the truck drivers behind him informed him of the warning concerning the vehicle driving the wrong way and he attempted to get Joy's attention to slow down to let him pass immediately. Key stated there was no way he could warn other drivers such as plaintiff's son. He testified that he chose to go forward, rather than slow down, because he had no way of knowing whether, if he did so, the Ranaudo vehicle would stay behind him or move

over to the driving lane, thereby blocking him from leaving the passing lane and moving to the right.

Defendants, citing the above facts, strenuously maintain that they breached no duty of care, and Supreme Court found in their favor in that regard. However, it is unnecessary for us to resolve that issue on this record. Assuming, without deciding, that plaintiffs correctly contend that they raised issues of fact as to whether any duty was breached, we nonetheless find that defendants were entitled to summary judgment because the proof fails to reveal that any of the alleged failures of defendants were a proximate cause of the accident. While proximate cause is ordinarily a factual question for the jury, where "the evidence conclusively establishes that there was an intervening act which was so extraordinary or far removed from the defendant's conduct as to be unforeseeable," proximate cause may be determined as a matter of law (*Decker v Forenta LP*, 290 AD2d 925, 926 [2002] [internal quotation marks and citation omitted]; *see Kemper v Arnow*, 18 AD3d 939, 941 [2005], *lv denied* 5 NY3d 708 [2005]; *Litts v Best Kingston Gen. Rental*, 7 AD3d 949, 951 [2004]; *Haughton v T & J Elec. Corp.*, 309 AD2d 1007, 1008 [2003], *lv denied* 1 NY3d 508 [2004]). Here, Rudnitsky's act of driving the wrong way down Interstate 88 was so attenuated from any claimed negligence on the part of defendants that it "constituted an extraordinary intervening act" relieving defendants of any liability (*Kemper v Arnow*, 18 AD3d at 942; *see Carson v Dudley*, 25 AD3d 983, 984 [2006]). Accordingly, defendants' motions for summary judgment were properly granted.

The remaining arguments raised by plaintiffs have been examined and found to be unpersuasive. In light of our conclusion that the complaint was properly dismissed, plaintiffs' arguments related to the denial of their cross motion have been rendered academic.

Spain, J.P., Lahtinen and Egan Jr., JJ., concur. Ordered that the order is affirmed, with one bill of costs.

